00UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

LAMAR ADVERTISING OF PENN, LLC,

           Plaintiff,

                                                                                  **Hon. Hugh B. Scott**

           v.                                                                 01CV556A

                                                                                      **Order**

TOWN OF ORCHARD PARK, NEW YORK,

           Defendant.

 

Before the Court are a series of discovery-related motions. First, certain non-party witnesses, chairs of the political parties in the defendant Town of Orchard Park (hereinafter "Quashing Movants"), move to quash subpoenas issued for their depositions (Docket Nos. 57, 61)[1].

Second, plaintiff moves to compel depositions (including those for the defendant Town of Orchard Park (hereinafter "Town") town attorney, former supervisor, town building inspector, and town's party chairs) and to re-establish a Scheduling Order (Docket Nos. 64, 66)[2].

---

[1] In support of these motions, the Quashing Movants submitted declarations, memorandum of law, Docket Nos. 57, 58, 61, reply attorney's affirmation, Docket No. 70, and reply memorandum of law, Docket No. 71. Plaintiff opposed through its motion to compel, Docket No. 66, and memorandum of law, Docket No. 67.

[2] In support of its motions to compel, plaintiff submitted attorney affidavits with exhibits, Docket Nos. 64, 66, including audio tapes of town board meeting, Docket No. 66, Ex. G, memorandum of law, Docket No. 67, reply attorney's affidavit, Docket No. 73, and reply memorandum, Docket No. 74. Defendant opposed through its cross-motion for a protective order, Docket No. 68.

Third, the defendant Town cross-moves for a protective Order barring discovery from the Town's attorney and former supervisor and a designated witness (Docket No. 68)[3].

At issue for all motions is the scope of plaintiff's discovery surrounding the Town's zoning ordinances regulating signs in the Town. Most of the motions were given a common briefing schedule and all were given the same argument date, with responses due by February 17, 2006, any replies by February 24, 2006, and argument scheduled for (but ultimately not held, see Docket No. 75) on March 3, 2006 (Docket Nos. 60, 63, 65, 69). The motions were deemed submitted on March 3, 2006, and the Court reserved decision (Docket No. 75). Following the Quashing Movants' motion, the Court also stayed the Quashing Movants' depositions until after resolution of this motion (Docket No. 60).

## BACKGROUND

*Procedural History*

The initial Complaint (Docket No. 1) challenged the constitutionality of defendant Town's sign ordinance, Ch. 144, Town of Orchard Park Code. As found by the United States Court of Appeals for the Second Circuit, <u>Lamar Advertising of Penn, LLC v. Town of Orchard Park</u>, 356 F.3d 365, 367, 369 (2d Cir. 2004), plaintiff alleged that the sign ordinance was facially unconstitutional, suing under 42 U.S.C. § 1983. Plaintiff argued that the ordinance violated the First Amendment because it was unsupported by a legitimate government purpose, it discriminated between and among signs bearing commercial and non-commercial speech. Plaintiff deemed the ordinance vague and leaving too much discretion with the Town Board in

---

[3]This motion was supported by defense counsel's affirmation with exhibits, Docket No. 68. Plaintiff opposed in its reply memorandum, Docket No. 74.

the approval of signs, and the ordinance conditioned speech on the payment of an excessive fee (the permit application fees), id. at 369.

Defendant answered (Docket Nos. 3, 6). In February 2002, defendant amended the sign ordinance, among other amendments to add a provision listing the purposes for the ordinance, see Lamar Ad., supra, 356 F.3d at 369-70. Plaintiff then moved for summary judgment and for injunctive relief (Docket No. 8). The undersigned issued a Report & Recommendations (Docket Nos. 23, 24) recommending denial of plaintiff's summary judgment and injunction motion. Plaintiff noted its objections (Docket Nos. 25, 30) and Chief Judge Arcara adopted the Report & Recommendations (Docket No. 34) and set a trial date (Docket Nos. 34, 37).

Plaintiff then appealed (Docket No. 35) and defendant cross-appealed (Docket No. 39). The Second Circuit vacated in part and affirmed in part this Court's judgment denying plaintiff summary judgment (Docket No. 43), Lamar Ad., supra, 356 F.3d 365 (2d Cir. 2004), holding that plaintiff had standing to contest the constitutionality of the zoning ordinances, id. at 373-75. The Second Circuit held that plaintiff alleged in its Complaint a multi-phased plan to build signs that would be restricted by the Town's ordinance and that plaintiff need not have first sought and been denied any permit prior to making its facial challenge to the sign ordinance, id. at 374 (citations omitted), hence alleged a cognizable injury giving it standing to sue, id. at 375. The Second Circuit vacated this Court's judgment on severability, id., also noting that some of plaintiff's claims were now moot (given amendments to the ordinance) but recognized plaintiff's ability to amend the Complaint to address the amended ordinance, id. at 368, 380. The Second Circuit remanded two major issues for further proceedings to be addressed as the parties proceed, id. at 380.

Plaintiff next filed and served an Amended Complaint (Docket No. 45), which defendant answered (Docket No. 48). Plaintiff asserts claims under § 1983 for the Town's violations of plaintiff's rights under the First, Fifth, and Fourteenth Amendments through enactment of an amended version of the sign ordinance. The Amended Complaint addressed the April 2004 amended sign ordinance (referred to by plaintiff, and here, as the "Fourth Ordinance," Docket No. 45, Am. Compl. ¶ 37) as well as the original enactment. Plaintiff alleges that the ordinance prohibition of "billboards" as described therein constitutes impermissible, content-based restriction on plaintiff's rights of free speech (Docket No. 45, Am. Compl. ¶¶ 43-49), that the ordinance made invidious distinctions between local businesses (which were allowed to have off-site signs) and all other businesses (which were not allowed) (id. ¶¶ 51-56). The amended ordinance allowed non-commercial speech and commercial speech on-site, but no other speech, in violation of the First Amendment (id. ¶¶ 59-69). Plaintiff alleges that the defendant Town enjoys unbridled discretion in allowing certain other signs (id. ¶¶ 72-82, 79). Plaintiff complains that the schedule of fees (based upon the square footage of the sign) conditioned speech upon payment of an excessive fee (id. ¶¶ 84-91). Finally, plaintiff alleges that the ordinance is impermissibly vague (id. ¶¶ 87-88, 92-96).

Plaintiff wants to enjoin enforcement of this Fourth Ordinance and plaintiff be allowed to erect outdoor advertising signs without restriction in Orchard Park. Plaintiff also seeks costs, attorney's fees and other relief (id. at 24-25), including declaratory relief that the Fourth Ordinance (id. ¶ 37) is unconstitutional. Note, plaintiff is not seeking damages. Chief Judge Arcara referred the case back to the undersigned for pretrial matters (Docket Nos. 49, 50, 51).

On May 12, 2005, the Court set a Scheduling Order with discovery due by December 30, 2005, and dispositive motions by March 30, 2006 (Docket No. 53). At a subsequent conference (see Docket No. 55), the parties indicated that this schedule may need to be extended. Defendant Town proposed to amend again its zoning ordinances (in part) in light of a recent district court opinion, <u>Nichols Media Group, LLC v. Town of Babylon</u>, 365 F. Supp. 2d 295 (E.D.N.Y. 2005). Once the Town amended its ordinances, plaintiff intended to seek leave to amend its Complaint to address the amended version of the ordinances, thus requiring extension of the existing Scheduling Order. Defendant indicates that the ordinance was amended on February 1, 2006 (Docket No. 68, Def. Memo. of Law at 1; <u>see</u> Docket No. 68, Def. Atty. Affirm. ¶¶ 10, 12-13, 14, Ex. B; Docket No. 70, Quashing Movants' Atty. Affirm. ¶¶ 4-5, Ex. A). To date, however, no one has sought leave to amend the pleadings.

*Present Motions*

As the parties conducted their respective discovery, they made the present motions. First, the Quashing Movants, the party chairs of the Democratic (Thomas Glenn), Republican (James Domagalski), Conservative (Remy Orffeo) (Docket No. 57), and Independence Parties (F. Patrick Mahoney) (Docket No. 61) in the defendant Town, moved to quash subpoenas (Docket No. 57, Kaczmarski Affirm. Exs. A-D) for their respective depositions by plaintiff initially scheduled for January 30 or 31, 2006. The Quashing Movants also seek recovery of their attorneys' fees, costs and disbursements (Docket No. 57).

In 2001, the Quashing Movants, as party chairs, mutually pledged to refrain from posting political signs in Orchard Park following the Town's repeal of zoning restrictions on political signs (Docket No. 57, Domagalski Aff. ¶¶ 8, 9, 7; <u>see also</u> Docket No. 57, Glenn Aff. ¶ 4, Orffeo

Aff. ¶ 4; Docket No. 61, Mahoney Aff. ¶ 4)). The party chairs' "gentlemen's" agreement was recorded in the Town Board's minutes of February 21, 2001 (Docket No. 57, Domagalski Aff. ¶ 9; see Docket No. 66, Pl. Motion to Compel, Ex. G).

These movants also initially sought to quash the subpoena served upon Mahoney (see Docket No. 57, Domagalski Aff. ¶ 8) as a non-party witness similarly situated to movants since Mahoney was out of town when the motion was filed and then had not joined it. Mahoney then made his own "amended" motion to quash (Docket No. 61), joining with the other Quashing Movants in their motion.

The Quashing Movants argue that the subpoenas are unduly burdensome, that the Movants lack knowledge relevant to the claims asserted by plaintiff. See Fed. R. Civ. P. 45(c)(3)(A)(iv). As for Domagalski, who is also an attorney who represents the defendant Town generally and in this action (Docket No. 57, Domagalski Aff. ¶ 4[4]), the Quashing Movants argue that questioning him may lead to disclosure of attorney-client privilege materials, attorney work product matters, and materials prepared for litigation.

Plaintiff later essentially cross-moved to compel the depositions of these party officials (Docket No. 66), as well as moving to depose or continue the deposition of certain town officials (Docket No. 64). Defendant Town opposed and cross-moved for a protective order against producing present or former town officials (Docket No. 68).

The last scheduling Order in this action (Docket No. 53) had dispositive motions due by March 30, 2006. The parties at a subsequent conference indicated their intention to seek a

---

[4]Domagalski has not made a formal appearance with Thomas Knab, his partner at Hiscock & Barclay, as counsel for defendant Town of Orchard Park in this action.

6

further extension of that schedule because defendant Town intended to amend the zoning ordinance and plaintiff intended to amend its pleading to address the revised ordinance (see Docket No. 55). The Town amended the zoning ordinance on February 1, 2006 (and plaintiff has yet to seek leave to amend the Complaint as a result). On January 10, 2006, plaintiff proposed an amended schedule to defendant, but defendant declined (in part, awaiting action on amending the zoning ordinance) (see Docket No. 64, Pl. Atty. Aff. ¶¶ 27-29, Exs. H-J; Docket No. 68, Def. Atty. Affirm. ¶¶ 23-25). Plaintiff now moves for extension of the discovery deadline (to preserve its right to complete already noticed depositions) and for an amended Scheduling Order in general (Docket No. 64, Pl. Atty. Aff. ¶¶ 25-30, Exs. H, J, letters of plaintiff's counsel, Jan. 10, 13, 2006). Plaintiff makes no mention of an intention to further amend the Complaint in its moving papers. The Town contends that, even without an amended Complaint, the time plaintiff proposes to complete discovery is not sufficient and requires thirty more days (Docket No. 68, Def. Atty. Affirm. ¶ 25).

## DISCUSSION

I.   Quashing Subpoenas

"The reach of a subpoena issued pursuant to Fed. R. Civ. P. 45 is subject to the general relevancy standard applicable to discovery under Fed. R. Civ. P. 26(b)(1)." Syposs v. United States, 181 F.R.D. 224, 226 (W.D.N.Y. 1998) (Foschio, Mag. J.). Under Rule 26(b)(1), parties may obtain discovery "that is relevant to the claim or defense of any party" and that "relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Where the subpoena seeks information not relevant to the case, the subpoena is improper and should be quashed. Langford v. Chrysler

Motors Corp., 513 F.2d 1121 (2d Cir. 1975). The quashing party bears a heavy burden of proof, Mangla v. University of Rochester, 168 F.R.D. 137, 140 (W.D.N.Y. 1996) (Feldman, Mag. J.).

The Quashing Movants urge that, as private citizens or private organizations (the political parties they chair), they were not responsible for the Town's decisions regarding sign zoning ordinances and they deny knowledge about those municipal decisions. Any questioning of them would be burdensome, irrelevant to the claims in this action, and go beyond the scope of this action. As private citizens without an allegation of state action with the Town, plaintiff's Fourteenth Amendment claims would not reach movants, hence making their compelled testimony burdensome. (Docket No. 58, Movants Memo of Law at 3-5.) Further, they contend that the agreement at issue involved pre-2001 claims that were deemed moot by this Court and the Second Circuit by the Town's subsequent amendment of the sign ordinance, see Lamar Ad., supra, 356 F.3d at 375-79.

Plaintiff notes that quashing a subpoena is very rare (Docket No. 67, Pl. Memo of Law at 2, citing Moore's Federal Practice (3d Ed.) § 45.04[3][a]; Flanagan v. Wyndham Int'l, Inc., 231 F.R.D. 98, 103 (D.D.C. 2005)). It urges the proper procedure would be to have the depositions go forward and movants object as to particular questions (Docket No. 67, Pl. Memo. at 3). Plaintiff also contends that the Quashing Movants' state action analysis is flawed.

Both parties argue this Court's earlier Report & Recommendations in Davis v. Cole-Hoover, No. 03CV550, Docket No. 59, 2004 U.S. Dist. LEXIS 13836 (W.D.N.Y. June 14, 2004), adopted, Docket No. 76, and its discussions of when private actors may be deemed state actors. Whether either party's state action analysis is correct here, however, is not pertinent. Rather, the key question is the mootness of plaintiff's claims involving the party chairs' 2001

agreement relative to the subsequently amended sign ordinance.  Plaintiff's claims under its Amended Complaint arise from the Fourth Ordinance of April 2004 (Docket No. 45, Am. Compl. ¶¶ 43-103, 125-29), which has been amended again in February 2006.  Plaintiff's Eighth Claim refers to the amendment of the First Ordinance in 2001 to repeal restrictions on political signs and then the "gentlemen's agreement" among the political party chairs to not have their candidates post such signs, alleging that defendant Town engaged in a pattern and practice of denying citizens their constitutionally protected rights (id. ¶¶ 105-13).  But even this claim seeks to enjoin enforcement of the **Fourth** Ordinance of April 2004 because of this alleged past pattern.  The claim is not that these party chairs were state actors (or ultimately defendants in this action), rather the claim focuses on the Town's alleged pattern of disregarding the state of the First Amendment law regarding commercial signs (including possibly inducing these private citizens to restrain themselves).  Whatever merit there ultimately may be to this claim, absent a motion to dismiss this claim[5] (and to stay discovery pending disposition of that motion) plaintiff is entitled to discovery relevant to it.  The better practice here is to allow the subpoena and depositions go forward, with witnesses asserting whatever objections or privileges they have during the course of the examinations, with any outstanding issues to be resolved after the examination.  Therefore, the Quashing Movants' motion to quash (Docket Nos. 57, 61) is **denied** as well as their request for fees associated with this motion and plaintiff's cross motion to compel the deposition of the party chairs (Docket No. 66) is **granted**.

---

[5] In addition to there not presently being such a motion pending, defendant Town has not taken a position on these subpoenas or the motions to quash them.

II. Motions to Compel (Docket Nos. 64, 66) and for Protective Order (Docket No. 68)

"Parties may obtain discovery regarding any matter, <u>not privileged</u>, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter." Fed. R. Civ. P. 26(b)(1) (emphasis added). If a party, without substantial justification, fails to attend its deposition, such as the Town's Rule 30(b)(6) designee, the Court may compel that appearance or if a witness for a party fails to answer a question under Rule 30, the Court may compel an answer, Fed. R. Civ. P. 37(d)(1), (a)(2)(B). On the other hand, a party may seek a protective order to protect a party from annoyance, embarrassment, oppression, or undue burden, Fed. R. Civ. P. 26(c).

As stated above, plaintiff's motion to compel the examinations of the town party chairs (Docket No. 66) is **granted**. Plaintiff seeks to depose town building inspector Andrew Geist, former town supervisor Toni Cudney, and town attorney Leonard Berkowitz (Docket No. 64), as well as a designated Rule 30(b)(6) witness to testify on the Town behalf and defendant town has cross-moved to resist these depositions.[6]

 A. Town Supervisor and Building Inspector

It is not clear from either parties' papers what the objection is to the Town building inspector testifying. Defendant asserts various privileges against producing these witnesses

---

[6]Plaintiff alternatively argues that defendant's cross-motion is untimely, Docket No. 74, Pl. Memo. at 16. Given consideration of plaintiff's motion to compel would include whatever opposition defendant produced and such opposition would arise in a cross-motion for a protective order, and that this February 17, 2006, cross-motion as a response was timely as a responding paper, <u>cf.</u> Docket No. 65 (responses due Feb. 17, 2006), the Court denies plaintiff's timing argument.

(Docket No. 68) and cross-moves for a protective order against their production. For these witnesses, the Town claims legislative and deliberate process privileges, see Searington Corp. v. Incorporated Village of North Hills, 575 F. Supp. 1295, 1298 (E.D.N.Y. 1981), to avoid revealing the motivations and deliberations underlying the sign ordinance and its amendments (Docket No. 68, Def. Memo. at 3-7). The Town points to the 2006 amendments as the relevant version of the sign ordinance and that public record contains sufficient information regarding the deliberative documents used to enact that amendment. For town attorney Berkowitz, the Town also asserts attorney-client privilege. It also argues that their testimony would be irrelevant.

       1.      Legislative Privilege

Derived from legislative immunity, some courts have held that legislators have a privilege against testifying about legislative actions and legislative processes. See Searington, supra, 575 F. Supp. at 1298. The purpose of this privilege is to prevent inquiry into legislators' motives by shielding legislators from civil proceedings which disrupt and question their performance. Id. at 1299. Where recognized and unlike legislative immunity, legislative privilege is not absolute. Courts balance the interests of preserving the integrity of the legislative process and the needs for disclosure within a particular action. Rodriguez v. Pataki, 280 F. Supp. 2d 89, 95 (S.D.N.Y. 2003) (Maas, Mag. J.). "[N]otwithstanding their immunity from suit, legislators may, at times be called upon to produce documents or testify at depositions." Id., citing Village of Arlington Heights v. Metropolitan Hous. Dev. Corp., 429 U.S. 252, 268 (1977).

Here, plaintiff sued the defendant town only, and not any officials or legislators, cf. Searington, supra, 575 F. Supp. at 1298 (Docket No. 74, Pl. Memo. at 12), and plaintiff seeks to depose the former town supervisor, the only legislator among those witnesses at issue in these

motions. The Town has not suggested a basis for it to claim this privilege as apart from town board members. The cases the Town cites all named the legislators as defendants as well as witnesses, Docket No. 68, Def. Memo. at 3-5, citing Searington, supra, 575 F. Supp. at 1296, 1298; Gray v. Board of Educ., N.Y.C., 692 F. 2d 901, 902, 903, 904 (2d Cir. 1982); Rodriguez, supra, 280 F. Supp. 2d at 92 (defendant legislators in reapportionment case). It is not clear that the Town can invoke this privilege where a legislator is not a party. Therefore, this privilege does not apply here.

      2.      Deliberative Privilege

Defendant Town alternatively cites the deliberative privilege from producing documents sought by plaintiff (Docket No. 68, Def. Memo. at 5-7). The Town seeks to preclude disclosure of documents prepared by the Town's attorney and used by the Town Board in enacting the 2006 ordinance amendments (deeming the 2001, 2002, and 2004 versions of the ordinance and related documents moot). The Town concludes that the factual documents used by the Town Board for the 2006 amendments are public and readily available. (Docket No. 68, Def. Memo. at 6.)

This privilege protects documents reflecting advisory opinions, recommendations and deliberation, N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 150 (1975); Manzi v. DiCarlo, 982 F. Supp. 125, 130 (E.D.N.Y. 1997) (Go, Mag. J.). To qualify for this privilege, documents must be pre-decisional and actually relate to process by which policies are formulated. Only documents prepared to assist the decision maker in arriving at a decision are privileged. Manzi, supra, 982 F. Supp. at 130. Some courts question whether this privilege extends to local legislative actions, id. (citing cases).

What is not clear from the motion papers, however, is what document production plaintiff seeks that defendant now wishes to suppress. The Town's motion sought only a protective order against deposing certain town officials or former officials, namely the former town supervisor and present town attorney (Docket No. 68, Def. Atty. Affirm. ¶ 27). While stating that earlier deposition notices sought information covered by this privilege (see Docket No. 68, Def. Atty. Affirm. ¶ 2(a), (b)), the Town's moving papers did not include those notices (or the notices for the witnesses the Town now objects to producing, cf. Docket No. 64, Pl. Atty. Aff. Exs. A, E (deposition notices for Geist, Cudney, the Town's Rule 30(b)(6) witness, and Berkowitz seeking production with witnesses of "all documents relating or referring to the passage, application, modification, interpretation and enforcement of the Ordinances at issue in this action"). The Town did not submit, for example, a privilege log of documents it claims it would have to produce at depositions demanded by plaintiff that are governed by the deliberative privilege in order for the Court to determine whether the privilege applies to a given document. In Manzi v. DiCarlo, the court determined that documents met the standard for deliberative privilege, if pre-decisional and relate to process by which policies are formulated, 982 F. Supp. at 131. Therefore, absent identification of specific documents sought to be produced and the Town believes are privileged, this privilege is not applicable.

   3.  Application to Witnesses Sought

Defendant does not articulate the role of the building inspector in the legislative or deliberative process. The building inspector, while in attendance at town board meetings (see, e.g., Docket No. 70, Quashing Movants' Atty. Reply Affirm. Ex. A) is not a board member. Therefore, plaintiff's motion to compel is **granted** as to the building inspector.

Plaintiff counters that the Town fails to show a lack of relevance in these witnesses (Docket No. 74, Pl. Reply Memo. at 1-2). As for the former town supervisor, plaintiff wishes to ask her about her role in the political parties' "gentlemen's agreement" regarding campaign signs in 2001 following the town's repeal of an earlier version of the sign ordinance that banned such signs (id. at 8). Plaintiff argues that the supervisor's testimony may point to evidence of the party chairs acting as state actors in reaching that "gentlemen's agreement." Furthermore, the legislative and deliberative process cases defendant cites involve immunity from suit and not bars to testimony (id. at 12-13).

Given the decision above to uphold the subpoenas of the party chairs, former supervisor Cudney also should be questioned because her testimony reasonably will lead to admissible evidence (primarily on plaintiff's Eighth Claim and on the question of the amount of the permit fees, see id. at 10). Thus, this portion of plaintiff's motion to compel (Docket No. 64) is **granted** and the parallel portion of defendant's cross-motion for a protective order (Docket No. 68) is **denied**.

B.   Town Attorney

Defendant Town generally asserts attorney-client privilege to preclude town attorney Berkowitz' testimony (Docket No. 68, Def. Memo. at 7-8).

Plaintiff points to the fact that the Town identified Berkowitz as a Rule 26(a)(1)(A) witness as a person with discoverable information. But merely identifying a possible witness does not waive any privileges that defendant may assert as to that defendant. Rule 26(a)(1)(A) requires a party to disclose the name and address of "each individual likely to have discoverable information that the disclosing party may use to support its claims or defenses." The better

practice may have been to assert the privilege immediately with the disclosure, but Rule 26(a)(1)(A) does not require such an assertion. (Docket No. 74, Pl. Memo. at 4-5.)

Plaintiff points out that the Second Circuit remanded this case to fully develop the record, Lamar Ad., supra, 356 F.3d at 380, and that Supreme Court and Second Circuit precedent in commercial sign cases requires courts to scrutinize the government's purpose in enacting the regulations (Docket No. 74, Pl. Memo. at 5-7). Plaintiff believes that Berkowitz will be used by defendant to establish the extrinsic evidence for the town's purpose in enacting and amending its sign ordinance (id. at 7). Further, Berkowitz has "spoken openly about his views on the constitutionality of the Town sign ordinance" (id.) which plaintiff concludes should allow it access to question him about that opinion.

Rather than preclude any examination of Berkowitz, plaintiff should be allowed to examine him and he may invoke his privileges and the Town may preserve its objections and complete the deposition. Berkowitz' public statements, including those rendered in open, public meetings of the town board (as opposed to executive sessions) are permissible subjects for examination. Legal advice rendered to the board or board members (for example in executive sessions) where attorney-client communication is expected may raise areas of privilege subject to objection.

    C.    Mootness

Alternatively, the Town argues that plaintiff seeks discovery on issues rendered moot by the Town's 2004 and 2006 amendments to the sign ordinance (Docket No. 68, Def. Memo. at 9-11). But a review of the prior versions of the sign ordinance may be necessary to study the latest amendments and are subject to discovery.

    D.    Plaintiff Seeks Discovery Previously Obtainable

Finally, the Town argues that these depositions (especially for the Rule 30(b)(6) representative of the defendant Town) would seek discovery that was obtainable in prior depositions and therefore precluded under Rule 26(b)(2)(ii) (Docket No. 68, Def. Memo. at 8-9). But defendant Town did not identify any of the witnesses it already produced as a representative for the Town to limit possible duplication or cumulative testimony.

IV.    Extension of Scheduling Order

Modification of a Scheduling Order is done only upon a showing of good cause. Fed. R. Civ. P. 16(b); see 6A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1522.1, at 230-31(Civil 2d ed. 1990). "In the absence of some showing of why an extension is warranted, the scheduling order shall control." Id. at 231. This Court has broad discretion in preserving the integrity of its Scheduling Orders, see Barrett v. Atlantic Richfield Co., 95 F.3d 375, 380 (5th Cir. 1996), including the discretion to extend its deadlines when good cause is shown.

This Court shall enter a separate Scheduling Order to amend the existing Order (Docket No. 53). The Court first considered amending the Scheduling Order in November 9, 2005 (see Docket No. 55), when the Town indicated that it intended to amend the sign ordinance and plaintiff stated that it would amend its pleadings to address the new ordinance. The Court refrained from amending the schedule until the Town had acted to amend its ordinance. Plaintiff now proposes a schedule (Docket No. 64, Pl. Atty. Aff. Ex. H) that is not tied to the Town's amendment process. The Town now argues that plaintiff has not sought enough time to complete discovery in this action (Docket No. 68, Def. Atty. Affirm. ¶ 25).

The Court agrees that an amendment in the Scheduling Order is necessary, but notes the age of this case (despite its extensive procedural history, including one trip to the Second Circuit). It was commenced in 2001. Defendant has amended the ordinance at issue at least five times to present. On the one hand, this case should have been resolved by now and additional time may just delay its ultimate disposition. On the other hand, each statutory amendment by the Town may require plaintiff to re-evaluate its claims. The Amended Complaint (Docket No. 45) is due in part to changes in the ordinance by the Town's amendments. Therefore, the Amended Scheduling Order will provide a brief period for plaintiff to move for leave to amend the Complaint based upon the 2006 amended ordinance. The case then will go forward based upon that statute. Time will be provided to complete outstanding discovery and to allow for dispositive motions at the earliest moment.

**CONCLUSION**

For the reasons stated above, the non-party Quashing Movants' motions to quash the subpoena (Docket Nos. 57, 61) are **denied**. Plaintiff's motion to compel (Docket No. 64) is **granted** as to deposing present or former Town officials; and plaintiff's second motion to compel (Docket No. 66) is **granted** as to the depositions of the party chairs. Plaintiff's motion for an Amended Scheduling Order (Docket No. 64) is **granted** and an Amended Order will be entered separately. As a result, defendant's cross-motion for a protective order (Docket No. 68) is **denied**.

So Ordered.

*/s/ Hugh B. Scott*

Honorable Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
March 24, 2006